T.C. Memo. 2014-234

UNITED STATES TAX COURT

RONALD L. KIRKPATRICK, SR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6525-13L.                    Filed November 17, 2014.

Donald W. Pemberton, for petitioner.

Beth A. Nunnink, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  This proceeding was commenced in response to a notice of

determination concerning collection action(s) under section 6320 and/or 6330 with

respect to petitioner's Federal income tax liability for 2010 and unpaid trust fund

recovery penalties under section 6672 for quarters ended September 30 and

December 31, 2006, March 31, 2007, December 31, 2008, March 31 and June 30,

**[*2]** 2009 (collectively, quarters in issue), and December 31, 2010. The Court granted respondent's motion to dismiss on the ground of mootness and to strike as to the income tax liability for 2010. Within that motion, however, respondent stated that "[t]he trust fund recovery penalty liability for the 4th Quarter of 2010 was mistakenly included on the Notice of Determination. No such liability exists, and no Notice of Intent to Levy for the 4th Quarter of 2010 was issued." On the basis of the record, this quarter appears moot; accordingly, this case will be dismissed sua sponte as to petitioner's trust fund recovery penalty liability for the quarter ended December 31, 2010. As to the (remaining) quarters in issue, the issue for decision is whether the settlement officer abused her discretion in sustaining the proposed levy. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

FINDINGS OF FACT

Material facts are contained in the administrative record of the exchanges between petitioner and the Internal Revenue Service (IRS) Office of Appeals (Appeals Office). That record has been stipulated. The stipulated facts are incorporated in this opinion by this reference. Petitioner resided in Tennessee at the time he filed his petition.

**[*3]** Petitioner served as the chairman of the board of directors for Accurate Communications Corp. (Accurate). For the quarters in issue, Accurate failed to pay income and employment taxes related to Forms 941, Employer's Quarterly Federal Tax Return.

Petitioner and his wife jointly filed a personal 2010 Federal income tax return, which showed tax of $19,716. However, he did not pay his 2010 tax liability by October 15, 2011, the date the return was due. On December 7, 2011, petitioner entered into an installment agreement with the IRS to pay off his 2010 tax liability.

By February 15, 2012, Accurate owed Form 941 tax liabilities of $448,688.50. In Letter 2850, Approval of Request to Pay Taxes in Installments (Accurate IA letter), dated February 23, 2012, the IRS informed Accurate that its request to pay its Form 941 tax liabilities through an installment agreement had been approved. The Accurate IA letter addressed only Accurate and not petitioner.

Determining petitioner to be a responsible person of Accurate, the IRS assessed trust fund recovery penalties against him on March 12, 2012, with respect to the quarters in issue. Because of these additional assessments, the IRS terminated petitioner's installment agreement for his 2010 income tax liability on

[*4] or around July 28, 2012. On September 17, 2012, the IRS sent to petitioner Notice CP 90, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, informing him that he owed trust fund recovery penalties of over $160,000 and advising him that the IRS intended to levy to collect these taxes.

In response, petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (section 6330 hearing request). In the section 6330 hearing request, petitioner indicated, among other things, that he wanted an installment agreement and that he disagreed with the proposed levy action because an installment agreement was in place but was "terminated for no reason" as he was "not in default on the installment agreement". Petitioner later expressed to the Appeals Office settlement officer assigned to his case that he wanted an installment agreement for his 2010 income tax liability but would like for the collection of the trust fund recovery penalties to be suspended because Accurate was paying off those liabilities through its own installment agreement.

The settlement officer sent to petitioner a letter dated November 14, 2012, scheduling a telephone conference for December 18, 2012. This conference would be the primary opportunity of the section 6330 hearing for petitioner to explain why he disagreed with the collection action and to discuss possible collection alternatives. One paragraph of the November 14, 2012, letter stated:

**[*5]** On your request for a [section 6330] hearing, you indicated your installment agreement terminated for no reason. Our records indicated your installment agreement was established on December 7, 2011 and only included your outstanding tax liability for your Form 1040 for calendar year 2010. One of the terms of an installment agreement is that while the installment agreement is in effect, you will pay any federal taxes you owe on time. On March 12, 2012, you were assessed civil penalties for failing to pay the withheld taxes for Accurate Communications * * *. When the civil penalties were not paid, you did not meet terms of your installment agreement and your installment agreement defaulted.

The letter requested that petitioner complete and return, within 21 days, Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and Form 433-B, Collection Information Statement for Businesses.

Petitioner timely provided Form 433-A but did not include any of the required financial documentation. However, he later provided a revised Form 433-A and included three months of bank records and other documents prior to the telephone conference, which had been rescheduled for January 15, 2013. Petitioner also provided the first page of the Accurate IA letter for the settlement officer's consideration.

On January 15, 2013, the telephone conference took place between the settlement officer and petitioner's representative. The representative indicated that petitioner was not challenging the underlying tax liabilities and agreed to the civil penalties assessment. The settlement officer explained that petitioner's

[*6] financial information was incomplete due to, in part, omissions of property seemingly owned by petitioner and missing bank records from an apparent additional account. She also questioned petitioner's claim that he had monthly income of $7,688, because the three months of bank records showed average monthly deposits of $12,163.38. These concerns prevented her from making a determination regarding the appropriateness of an installment agreement.

From her review of the provided financial information, the settlement officer projected that petitioner had the ability to make monthly payments of at least $4,063. Petitioner's representative indicated that petitioner could not pay that much. The settlement officer concluded the conference by requesting that additional financial information be supplied by January 29, 2013. Otherwise, the settlement officer would make a determination based upon the provided documentation, which would result in her sustaining the proposed levy action.

On January 16, 2013, petitioner's representative called the settlement officer and indicated that petitioner wanted to pay in full the balance of his 2010 income tax liability in order to suspend collection of the trust fund recovery penalties. The settlement officer explained that even if the 2010 income tax liability was resolved, collection of the trust fund recovery penalties against petitioner would not be suspended simply because Accurate was paying off those liabilities

**[\*7]** pursuant to its own installment agreement. Petitioner's representative alleged that some other tax account--similarly situated to petitioner's circumstances--had been placed in suspense. The settlement officer replied that petitioner would need to provide an Internal Revenue Manual (IRM) or Internal Revenue Code section addressing how his account should be resolved; otherwise, she would not make a recommendation to suspend collection.

The deadline for getting the additional financial information submitted to the settlement officer was extended to February 13, 2013. By the day of the deadline, however, petitioner had failed to provide any of the requested additional financial information. Instead, petitioner's representative notified the settlement officer that he was sending funds to fully pay the 2010 income tax liability. He also wanted the settlement officer to provide her determination of the section 6330 hearing so that petitioner would be able to petition the Court. The settlement officer received petitioner's check for the full amount of the 2010 income tax liability on February 14, 2013.

Before making her determination, the settlement officer verified that the requirements of all applicable laws and administrative procedures had been met. In reviewing the provided financial documentation, the settlement officer determined that petitioner had the ability to pay his outstanding liabilities through

[*8] a collection alternative, but he would not agree to do so. On February 27, 2013, the Appeals Office sent to petitioner a notice of determination concerning collection actions(s) under section 6320 and/or 6330 sustaining the proposed levy action.

OPINION

Section 6330 generally provides that the Commissioner cannot proceed with levy on a taxpayer's property until the taxpayer has been given notice of and the opportunity for a section 6330 hearing and, if dissatisfied, an opportunity for judicial review of the administrative determination. At a section 6330 hearing, a taxpayer may raise any relevant issue relating to the collection action, including challenges to the appropriateness of the collection actions and possible collection alternatives. Sec. 6330(c)(2)(A). A taxpayer may contest the validity of the underlying tax liability, but only if the taxpayer did not otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see Hoyle v. Commissioner, 131 T.C. 197, 199 (2008).

The underlying liabilities in this case were assessed under section 6672, which imposes penalties for failure to collect, account for, and pay over income and employment taxes of employees--commonly referred to as trust fund recovery penalties. Petitioner does not dispute these underlying tax liabilities. Where there

**[\*9]** is no dispute as to the underlying liabilities, we review the actions of the Appeals Office for abuse of discretion. See Swanson v. Commissioner, 121 T.C. 111, 119 (2003); Sego v. Commissioner, 114 T.C. 604, 610 (2000). Abuse of discretion may be found if an action is arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner does not argue that he was wrongfully denied a collection alternative or that his prior installment agreement was wrongfully terminated. Instead, petitioner's position is that he was originally covered under the installment agreement entered into by Accurate for the trust fund recovery penalties, and, now that he is in compliance with his 2010 income tax obligation, he should be "recovered" under Accurate's installment agreement. Petitioner appears to have raised this concern during his section 6330 hearing. He did not, however, produce the Accurate installment agreement or any documentary corroboration of this position. Cf. Freeman v. Commissioner, T.C. Memo. 2011-38, slip op. at 6-7 (distinguishing the taxpayer's section 6672 liability from the employer's tax withholding liability and holding that an employer's installment agreement covers only its own tax liability and does not justify the release of a collection action against the taxpayer for his trust fund recovery penalties).

[*10] Petitioner instead attempts to support his position by arguing that the settlement officer failed to consider relevant parts of IRM pt. 5.14.7.4.1.  He asserts that this IRM part "clearly" states that the collection of trust fund recovery penalties "from responsible persons should be suspended so long as the primary business entity has an Installment Agreement and is current."  The relevant parts of IRM pt. 5.14.7.4.1 (March 11, 2011), relied upon by petitioner, are as follows:

> 6.  In general, do not request assessment of Trust Fund Recovery Penalties (TFRPs) if business taxpayers meet the terms of installment agreements.  However, TFRPs must be considered on the potentially responsible persons of the business entity based on the following procedures.
>
> 7.  If the agreement will not fully pay all balances due at least a year before the earliest Assessment Statute Expiration Date (ASED), then:
>
> A.  Assemble all documentation for completion of the penalty to the point of proposing assessment;
>
> B.  Complete interviews for all potentially responsible persons, and any other interviews necessary to determine responsibility and willfulness;
>
> C.  Secure 433A (Collection Information Statement) from all potentially responsible persons. Conduct financial analysis to determine whether the penalty, if assessed would be collectible;
>
> D.  Request signature of Form 2750, "Waiver Extending Statutory Period for Assessment of Trust Fund Recovery Penalty" from all potentially responsible officers.  See IRM 5.14.7.4.1(1) through (4); and

**[*11]** E.  If a potentially responsible officer refuses to extend the ASED, and the trust fund recovery penalty is determined collectible, complete and recommend assessment of the TFRP for that responsible person.

Petitioner neither explains how he arrives at his interpretation of the IRM part nor provides any authority that supports his interpretation.  However, even a liberal reading of IRM pt. 5.14.7.4.1(6) and (7) does not suggest that collection should be "suspended" on previously assessed trust fund recovery penalties of a responsible person.  As respondent points out, IRM pt. 5.14.7.4.1 is procedural guidance for initiating a business taxpayer, trust fund-related installment agreement.  IRM pt. 5.14.7.4.1(6) addresses a general rule of nonassessment of trust fund recovery penalties when commencing such an installment agreement.  But see IRM pt. 5.14.7.4.1(7) and (8) (providing circumstances when assessment of trust fund recovery penalties should be advanced against responsible persons related to "in-business" trust fund installment agreements).  It does not address suspension of collection after assessment with respect to an already established installment agreement.

Section 6330 provides due process protections for taxpayers in tax collection matters.  See Sego v. Commissioner, 114 T.C. at 608.  IRM pt. 5.14.7.4.1(6) and (7) pertains only to assessment of trust fund recovery penalties.

[*12] As petitioner did not challenge his underlying tax liabilities, there is no reason the settlement officer would need to consider the IRM with regard to assessment.

Moreover, the settlement officer acknowledged and considered petitioner's argument. While petitioner does not appear to have raised specifically IRM pt. 5.14.7.4.1(6) and (7) during the section 6330 hearing, the settlement officer nonetheless looked at relevant IRM parts in reviewing petitioner's case. In view of the record, we cannot conclude that her determination was arbitrary, capricious, or without sound basis in fact or law, which is the test to be applied. Whether or not other resolutions could have been reached by the settlement officer or by the Court is not the applicable test. The settlement officer did not abuse her discretion in sustaining the proposed levy.

We have considered the other arguments of the parties, but they are irrelevant, unsupported by the record or by authority, or otherwise without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered for respondent</u>.